O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES ANDREW NEVINS, | ) | Case No. CV 11-0828 JPR |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**I.  PROCEEDINGS**

   Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Disability Benefits and Supplemental Security Income. The parties filed a Joint Stipulation on November 9, 2011. The Court has taken the Joint Stipulation under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

**II. BACKGROUND**

Plaintiff was born on January 6, 1955. (Administrative Record ("AR") 19.) He graduated high school and worked as a letter carrier from October 1987 until his injury on October 17, 2006. (AR 11, 19-20, 156.) He has not worked at all since that date. (AR 20.)

On June 29, 2007, Plaintiff filed an application for Social Security Disability Benefits, alleging that he had been unable to work since October 17, 2006, because of chronic neck and shoulder pain and severe headaches stemming from a shoulder and neck injury. (AR 95, 123.) After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"). (AR 89.) It was held on December 17, 2008, at which time Plaintiff appeared with counsel and testified on his own behalf. (AR 16-43.) A Vocational Expert also testified. (AR 30-43.) The ALJ determined that Plaintiff was not disabled. (AR 15.) On January 20, 2011, the Appeals Council denied Plaintiff's request for review. (AR 1-3.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a

preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The five-step evaluation process

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of

nondisability is made and the claim is denied.  § 416.920(a)(4)(ii).
If the claimant has a "severe" impairment or combination of
impairments, the third step requires the Commissioner to determine
whether the impairment or combination of impairments meets or equals
an impairment in the Listing of Impairments ("Listing") set forth at
20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is
conclusively presumed and benefits are awarded.  § 416.920(a)(4)(iii).
 If the claimant's impairment or combination of impairments does not
meet or equal an impairment in the Listing, the fourth step requires
the Commissioner to determine whether the claimant has sufficient
residual functional capacity ("RFC")[1] to perform his past work; if so,
the claimant is not disabled and the claim is denied.
§ 416.920(a)(4)(iv).  The claimant has the burden of proving that he
is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.
If the claimant meets that burden, a prima facie case of disability is
established.  Id.  If that happens or if the claimant has no past
relevant work, the Commissioner then bears the burden of establishing
that the claimant is not disabled because he can perform other
substantial gainful work available in the national economy.
§ 416.920(a)(4)(iv).  That determination comprises the fifth and final
step in the sequential analysis.  § 416.920; Lester, 81 F.3d at 828
n.5; Drouin, 966 F.2d at 1257.

    B.    <u>The ALJ's application of the five-step process</u>

    At step one, the ALJ found that Plaintiff had not engaged in any
substantial gainful activity since October 17, 2006, the date of the

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

onset of his alleged disability. (AR 11.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "status post left shoulder repair/clavicle resection and multi-level degenerative disc disease of the cervical spine with neural foraminal narrowing and stenosis." (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (Id.) At step four, the ALJ found that Plaintiff retained the RFC to perform a range of "light work"[2] "except for limitation to occasional pushing/pulling with the left upper extremity; occasional overhead reaching with the left upper extremity; any concentrated exposure to vibrating tools; or any neck movement to the end ranges of motion (e.g., chin to chest, eyes skyward, or looking back over the shoulders with body static)." (Id.); see 20 C.F.R. § 404.1567(b). The ALJ concluded that Plaintiff was unable to perform his past relevant work as a letter carrier but acquired from that work transferable skills of "effectively communicating with the public, and customer service." (AR 14.) At step five, the ALJ found, based on the Vocational Expert's testimony and application of the Medical-Vocational Guidelines, that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Id.) The ALJ agreed with the Vocational Expert that Plaintiff could perform

---

[2] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]," and which mostly involves sitting but may involve occasional walking or standing. § 404.1567(a)-(b).

the work of "information clerk" and "gate guard." (Id.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 15.)

**V.   DISCUSSION**

Plaintiff contends the ALJ improperly (1) rejected the opinion of his treating physician, Dr. Robert Byers (J. Stip. 5-9); (2) found that Plaintiff was not credible as to the "intensity, persistence, and limiting effects" of his alleged disability (J. Stip. 9-13); and (3) credited the Vocational Expert's testimony that Plaintiff could perform alternative work (J. Stip. 13-19).

   A.   Rejection of treating physician's opinion

      1.   Applicable law

Generally, the opinions of treating physicians are afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was consistent with other evidence in the record. See 20 C.F.R. § 416.927(d)(2). If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record, it should be given controlling weight and should be rejected only for "clear and convincing" reasons. See Lester, 81 F.3d at 830; § 416.927(d)(2). When a treating physician's opinion conflicts with other medical evidence, the ALJ must provide "specific and legitimate reasons" for discounting the treating opinion. Lester, 81 F.3d at 830; Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Factors relevant to the evaluation of a treating physician's opinion include

the "[l]ength of the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship" between the patient and the physician. § 416.927(d)(2)(i)-(ii).

        2.    Applicable facts

Dr. Byers had been Plaintiff's treating physician since before his injury, in October 2006. (AR 29.) Notes from Dr. Byers's multiple examinations of Plaintiff between 2006 and 2008 showed that Plaintiff suffered from muscle spasms, decreased range of motion, left shoulder pain as a result of left rotator cuff syndrome, tendonitis, chronic pain syndrome, and weight loss. (AR 183, 185-86, 298-99.) Tests revealed neck pain with muscle spasms. (AR 301.)

In February 2007, Dr. Byers referred Plaintiff to Dr. Stephen Birch, an orthopedist. (AR 270.) Dr. Birch performed arthroscopic surgery on Plaintiff's shoulder on March 15, 2007, including a distal clavicle resection and arthroscopic subacromial decompression. (AR 124, 270.) A tear was discovered in Plaintiff's rotator cuff. (AR 270.) Plaintiff's shoulder functionality improved after the surgery but his neck did not, and Plaintiff continued to suffer from chronic pain and decreased range of motion in the neck, left shoulder stiffness, and pain with movement. (Id.)

On September 26, 2007, Dr. Birch examined Plaintiff again and found that Plaintiff had limited range of motion in his neck and shoulder and "significant pain in the anterior lateral clavicular area with cross-body adduction of the left shoulder." (AR 271.) Dr. Birch diagnosed Plaintiff with the following impairments:

    1.    Trauma to the cervical spine and left shoulder . . . .
    2.    Painful and stiff left shoulder as described above,

>    status post distal clavicle resection and acromioplasty with evidence of rotator cuff pain with rotator cuff stressing procedures.
> 3. Cervical spine strain with evidence of loss of cervical lordosis on plain films and a tiny herniated nucleus pulposus at C5-6 on the left causing mild foraminal stenosis at the C5-6 level.
> 4. Degenerative disc disease at L4-5 and more significantly L5-S1 with a mild retrolisthesis of L5 on S1.
> 5. Low back pain with intermittent sciatica left lower extremity.
> 6. Thoracic spine pain, most likely referred from the cervical spine.
> 7. Persistent moderate cervical spine pain that makes it difficult for this gentleman to sleep. He requires Lyrica and Dilaudid at night for sleep. He intermittently uses Percocet in exchange for the Dilaudid.
> 8. Chronic pain syndrome that will ultimately need referral to Pain Management for long-term management.

(AR 272.) Dr. Birch also noted that Plaintiff had been seen by a neurologist, Dr. Philip Delio, who believed Plaintiff's neck symptoms were "primarily musculoskeletal strain and ligamentous injury," and by an orthopedic spine specialist, Dr. Kahmann, who believed Plaintiff "has a chronic sprain problem with the ligaments in his neck with no neurologic impingement." (AR 271.)

In addition to referring Plaintiff to Dr. Birch, Dr. Byers also referred Plaintiff to a physical therapist, who treated Plaintiff

8

between April and September 2007 and who consistently found that Plaintiff suffered from chronic pain and "severe signs and symptoms" in his neck and shoulder areas "indicative of possible spinal arthritis." (AR 207-60.) In early 2007, prior to his surgery, Plaintiff was also seen by Dr. Mark Montgomery, who referred Plaintiff for an MRI on his left shoulder and diagnosed a left rotator cuff tear (AR 167, 169, 172, 175, 305), and Dr. Donald Fareed, who diagnosed Plaintiff with shoulder sprain and related ailments and gave Plaintiff multiple injections to his shoulder, which ultimately did not cure the problem (AR 162-63). In April 2007, Plaintiff was also seen by Dr. Jeoffrey Benson, who gave Plaintiff a C6-C7 translaminar epidural steroid injection and a left C5-C6 transforaminal epidural steroid injection. (AR 177-80.)

On October 16, 2008, Dr. Byers completed a physical residual functional capacity questionnaire for Plaintiff. (AR 306-09.) Dr. Byers reported that he had treated Plaintiff since October 18, 2005, and had seen Plaintiff every three to four months since then. (AR 306.) He stated that plaintiff suffered from chronic pain in his neck and shoulder. (Id.) The prescribed treatments were listed as narcotic pain medication, physical therapy, and acupuncture. (Id.) With respect to Plaintiff's work-related limitations, Dr. Byers opined that Plaintiff could not sit for more than 15 minutes at a time or more than two hours in an eight-hour workday; could not stand for more than 10 minutes at a time or two hours in an eight-hour workday; must walk for 60 minutes each day; could lift or carry more than 10 pounds only rarely and could never lift or carry more than that; could rarely look down or up and could never turn his head right or left or hold his head in a static position; and could never twist, stoop,

9

crouch/squat, climb ladders, or climb stairs. (AR 307-08.) Dr. Byers diagnosed Plaintiff as "unable to work" with "permanent/stationary disability." (AR 309.)

        3.    Analysis

The ALJ rejected Dr. Byers's opinion because "Dr. Byer's [sic] treatment records do not document signs, symptoms and/or laboratory findings or objective observations supportive of the limitations he assesses," "[t]he record consistently indicates multiple complaints and minimal objective evidence," and "the subjective medical history provided by the claimant appears to be the basis for findings and treatment." (AR 12-13.)

These statements do not reach the level of specificity required to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."). The ALJ had an obligation to set forth her own interpretations of the medical evidence and to explain why they, rather than Dr. Byers's findings, were correct. Id.; see McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejection of treating physician's opinion on ground that it was contrary to clinical findings in record did not "specify why the ALJ felt the treating physician's opinion was flawed"); see also Reddick, 157 F.3d at 725 (explaining that ALJ can meet requisite standard for rejecting treating physician's opinion deemed inconsistent with or unsupported by medical evidence "by setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings").

Moreover, the ALJ's conclusion that Dr. Byers's findings were based on Plaintiff's subjective statements and were unsupported by objective medical evidence is inconsistent with the record.  The ALJ noted that Plaintiff had also been seen by Dr. Montgomery, Dr. Fareed, Dr. Benson, and Dr. Birch, but she failed to elaborate on how, if at all, Dr. Byers's diagnosis conflicted with the diagnoses of the other doctors.  (AR 12.)  Moreover, several of these doctors performed MRIs, which revealed injuries and degenerative disease wholly apart from Plaintiff's claims of pain.  (AR 168-75, 270-73.)  The Court's review of those doctors' notes indicates that Dr. Byers's diagnosis was largely consistent with them.

The ALJ also rejected Dr. Byers's opinion because the ALJ found that Plaintiff underwent "limited and conservative treatment" that was "inconsistent with the medical response that would be expected if limitations were as severe as described by Dr. Byers."  (AR 13.)  This conclusion was not supported by substantial evidence in the record. Plaintiff was prescribed numerous pain medications, including narcotic medications such as Dilaudid and Percocet, and it is undisputed that he took the medications prescribed to him.  (AR 22-23, 149, 306.) Moreover, in 2007 Plaintiff underwent surgery on his shoulder, which failed to fix the problem, and he was told by at least two different doctors that he was not a candidate for further surgery.  (AR 25.) Plaintiff also received multiple steroid injections to his spine and shoulder and underwent six months of physical therapy.  (AR 162-63, 177-80, 207-60.)  To the extent the ALJ would contend these treatments are insufficient, she did not provide any evidence or examples of what

11

type of more substantial "medical response" would have been "expected" for Plaintiff's alleged symptoms; her failure to do so was improper. See Merker v. Astrue, No. CV 10-4058 JCG, 2011 WL 2039628, at *7 (C.D. Cal. May 25, 2011).

The Commissioner contends the ALJ did not err in rejecting Dr. Byers's assessment because it conflicted with objective medical evidence in the record and because it was based on Plaintiff's subjective complaints, which were not credible. (J. Stip. 21-29.) The Commissioner cites several examples in the record of objective medical evidence that allegedly conflicts with Dr. Byers's assessment and proves Plaintiff is not credible. The ALJ, however, did not articulate any of the specific reasons cited by the Commissioner as bases for rejecting Dr. Byers's findings, and this Court does not rely on them. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error for district court to affirm ALJ's credibility decision "based on evidence [ALJ] did not discuss" and "specific facts or reasons" ALJ did not assert).

Accordingly, the ALJ erred by rejecting Dr. Byers's opinion without providing specific, legitimate reasons for doing so.

B. <u>Adverse credibility determination and Plaintiff's ability to perform other jobs</u>

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discredit his subjective symptom testimony. (J. Stip. 9-13.) Plaintiff further argues that the Vocational Expert mischaracterized "customer service and effective verbal communication with the public" as "transferable" "skills" rather than traits, and in any event, Plaintiff did not have those skills. (J. Stip. 13-19.) Because the Court finds that the ALJ's rejection of Dr. Byers's

opinion was in error, it is not necessary for it to address the remainder of Plaintiff's arguments. See Negrette v. Astrue, No. EDCV 08-0737 RNB, 2009 WL 208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and lay-witness testimony).

## VI. CONCLUSION

When there exists error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Remand for further proceedings is appropriate "if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) (explaining that "decision whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for the payment of benefits is appropriate when no useful purpose would be served by further administrative proceedings and the record has been fully developed, Lester, 81 F.3d at 834, or when remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Courts may "credit as true" the opinions of treating physicians when "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman, 211 F.3d at

1178 (citations and quotations omitted); see Benecke, 379 F.3d at 594; Connett, 340 F.3d at 876 (recognizing that courts "have some flexibility in applying the 'credit as true'" rule).

Because the ALJ did not properly weigh and address Dr. Byers's opinion, outstanding issues must be resolved before a determination of disability can be made. Harman, 211 F.3d at 1178.

### ORDER

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: December 8, 2011

_____
JEAN P. ROSENBLUTH
U.S. Magistrate Judge

14